IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

————

PATRICIA J. GONZALES MORROW,

       Plaintiff,

v.                                                            No. CIV O3-1106 BB/WDS

CARI M. DOMINGUEZ, Chair, United States
Equal Employment Opportunity Commission,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court for consideration of the following motions: (1) an amended motion for summary judgment filed by Defendant (Doc. 85); (2) a motion by Plaintiff to summarily deny Defendant's original motion for summary judgment (Doc. 87); and (3) a motion by Defendant to strike Plaintiff's response to Defendant's motion (Doc. 98). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, will grant the motion for summary judgment in part and deny it in part. The Court will also deny the other motions filed by the parties.

**Summary of the Facts:** Plaintiff is employed by the Equal Employment Opportunity Commission ("EEOC") in that agency's Albuquerque office. Plaintiff claims she has suffered from a hostile work environment for many years, beginning in the mid-1990's. Plaintiff maintains the reasons for this hostile environment are several, including discrimination on the basis of her national origin, her gender, and her disability. She also contends the hostile work environment was created or allowed to continue in retaliation for activity she engaged in that was protected by Title VII or the Rehabilitation Act, which is a version of the Americans with Disabilities Act that

is applicable to federal employees.  29 U.S.C. § § 701 *et seq.*  The alleged harassment causing the hostile work environment culminated in four different disciplinary actions taken against Plaintiff: a letter of reprimand issued in June of 2001; removal of supervisory duties from Plaintiff, also in 2001; a suspension which took effect in October 2003; and another suspension which became effective in November 2004.[1]  In September 2003, Plaintiff filed this lawsuit, alleging violations of Title VII and the Rehabilitation Act.

Defendant has moved for summary judgment on all claims.  Due to both parties' failures to complete certain of their briefs by the assigned deadlines, as well as other minor violations of the local briefing rules, both parties have filed motions requesting extraordinary relief, such as summary denial of the motion for summary judgment, or refusal to consider Plaintiff's response brief to the motion.  Those motions will be addressed first.

**Motion to Summarily Deny Motion for Summary Judgment, and Motion to Strike Response:**  To an impartial third party such as this Court, counsel for both parties appear to be engaged in needless and unprofessional bickering.  It is true that minor violations of the rules have occurred; Defendants' brief was faxed to Plaintiff eight hours late, Defendants did not get the exhibits to that brief to Plaintiff's counsel for a number of days after the brief was faxed, Plaintiff did not file her response brief on time and had to request an extension of time, Plaintiff's brief exceeded the page limitations by one or two pages, etc.  None of these violations warrant the extraordinary relief requested by the parties.  Furthermore, these violations could and should have

---

[1]The last suspension, although discussed to some extent in the parties' submissions, is not part of this lawsuit; Plaintiff has only recently filed her EEOC claim concerning that suspension, and has therefore not yet exhausted her administrative remedies.

been addressed in a professional manner, without involving the Court's time and resources.  Both motions will be denied.

**Motion for Summary Judgment-- Standard of Review:**   "Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party."  Id.  On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question."  Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995).  The Court will consider the parties' motions in light of these standards.

**Motion for Summary Judgment--Merits:**  Defendant has raised a number of grounds for the requested summary judgment, including the following:  (1) failure to exhaust administrative remedies as to a number of incidents detailed in Plaintiff's submissions to the EEOC; (2) the only discrete actions that were properly exhausted do not rise to the level of adverse employment actions; (3) Defendant had legitimate, non-discriminatory reasons for the decision to remove Plaintiff's supervisory duties; (4) there was no actionable hostile environment, and no harassment was related to Plaintiff's protected status or Defendant's retaliatory intent; (5)

Plaintiff is not "disabled" within the meaning of the Rehabilitation Act; and (6) the

accommodation Plaintiff seeks for her alleged disability is not reasonable, as a matter of law.  In

response, Plaintiff has specified her claims.  She seeks relief for the hostile work environment

created by harassment, which she claims was directed at her due to her disability, her gender, her

national origin, and in retaliation for her protected conduct.  As part of the hostile-work-

environment claim, she seeks damages for having to be on leave without pay from June 8, 2001 to

November 5, 2001, as a result of the stress caused by Defendant's actions.  She also seeks relief

for two discrete actions taken by Defendant:  the removal of her supervisory duties and status,

and the October 2003 suspension.  Finally, she attacks the denial of her request for

accommodation of her disability.

 **I.  Exhaustion of Remedies As to October 2003 Suspension:**  The parties dispute

whether Plaintiff adequately exhausted her administrative remedies with respect to the discrete

action taken by Defendant, suspending Plaintiff for several days.  The incident leading to the

suspension occurred on May 22, 2003.  Although the suspension was proposed in July 2003, the

final decision was not made until September 29, 2003, and the suspension did not actually begin

until October 2003 [MSJ Exhs. O-2, O-3].  When a government employer takes a discrete action

such as imposing a suspension, the employee is required to exhaust her administrative remedies

prior to challenging that action in federal court.  42 U.S.C. § 2000e-16(c); *Jones v. Runyon*, 91

F.3d 1398, 1399 (10th Cir. 1996).

 The procedures the employee must follow for an original complaint of discrimination

include consulting an EEO Counselor prior to filing a complaint, within 45 days of the alleged

discriminatory act; filing a complaint if the informal resolution process does not resolve the

matter; requesting a hearing before an administrative law judge; and obtaining a final decision from the agency.  29 C.F.R. §§ 1614.105-110.  Plaintiff did not follow these procedures with respect to the October 2003 suspension.  Instead, she attempted to add the suspension issue to an already-pending EEOC complaint, which she had filed in June 2001.  She did so by allegedly sending an e-mail to Ms. Joan Watson, Director of Defendant's Office of Equal Opportunity, on July 17, 2003, before a final decision had been made concerning the proposed suspension.  In this e-mail Plaintiff mentions the proposed suspension along with other matters, and asks Ms. Watson to forward the e-mail to the administrative law judge ("ALJ") who was presiding over Plaintiff's already-pending EEOC complaint.  [Resp. Exh. 4]

As Defendant points out, however, sending this e-mail to the Director was not an adequate means of amending Plaintiff's prior complaint.  The e-mail did not trigger an actual, official amendment of the complaint; the ALJ never issued an order amending the complaint to address the suspension, and did not acknowledge in any way having received a request to amend the complaint.  Furthermore, once a hearing has been requested in a case, the proper procedure for amending a claim is to file a motion with the presiding ALJ asking to amend the complaint.[2] Finally, Plaintiff filed suit in this case before a final decision had even been made concerning the suspension--this lawsuit was filed September 23, 2003, and as noted above the final suspension decision was issued September 29, 2003.  The information before the Court therefore indicates the issue of the suspension was not before the ALJ, and was not exhausted (although, as a result

_____

[2]By way of comparison, a few days prior to Plaintiff's e-mail to Ms. Watson, her attorney had filed just such a motion to amend the complaint, requesting the addition of the May 22, 2003 incident and the resultant placement of Plaintiff on administrative leave as another example of harassment.  [Exh. Y-1, Reply]  The ALJ issued an order amending the complaint to include that issue.

of the amendment discussed above, the May 2003 incident underlying the suspension, and the resultant placement of Plaintiff on administrative leave, appear to have been part of the administrative case).   Plaintiff therefore has failed to exhaust her administrative remedies concerning the October 2003 suspension, leaving the Court without jurisdiction to consider that claim.[3]

**II.  Disability/Reasonable Accommodation Issue:**   Plaintiff claims two substantive violations of the Rehabilitation Act:  that she was harassed and thereby subjected to a hostile work environment due to her disability, and that she was refused a reasonable accommodation for her disability.  As discussed below, however, Plaintiff's claims fail for three reasons.  First, Plaintiff has failed to raise an issue of fact as to whether she has a disability, as that term is defined by the Act; second, Plaintiff's requested accommodation was not reasonable as a matter of law; and finally, Plaintiff presented no evidence that any harassment she suffered was due to her disability.

**A.  Whether Plaintiff is "Disabled":**   To be protected by the Rehabilitation Act, a person must be disabled as defined by the Act.  *See McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004).  The term "disabled," for purposes of this case, means the claimant must have a physical or mental impairment that substantially limits one or more of the "major life activities" of that individual.  *Id.*  To be substantially limited in a major life activity, the individual's impairment

---

[3]Since the facts surrounding this issue are somewhat confused in the briefs, the Court will reconsider this ruling if Plaintiff can submit authority indicating it was sufficient to amend the complaint to include the incident underlying the suspension, even if the decision to suspend had not yet been made when Plaintiff filed her lawsuit.

must prevent or severely restrict the individual from doing activities that are of central importance to most people's daily lives, and the impairment must be permanent or long-term. *Id.*

Plaintiff argues there is ample evidence to show that her mental impairments, including depression, panic attacks, and agoraphobia, prevent or severely restrict her from performing the major life activity of working. However, the undisputed evidence from Plaintiff's treating health professionals and from Plaintiff herself is to the contrary. Plaintiff works for Defendant as an investigator, and continues to do so despite her impairments. More importantly, however, there is no evidence that Plaintiff is impaired in any way from performing the job of an investigator. Instead, the only evidence is that her impairments restrict her from performing that job for Defendant if she continues to be supervised by the same supervisors. All of Plaintiff's treating health professionals testified that Plaintiff could do similar work as the work she is doing now, for a different employer or for the same employer under different supervision. [MSJ Exh. T, pp. 88-89; Exh. U, pp. 22, 27; Exh. V, p. 81; Exh. W, p. 22] Plaintiff herself testified not that she could no longer perform her job, but that she wishes to be transferred to the legal unit so she will not be supervised by Ms. Marchbanks, her current supervisor, or by Ms. Garcia-Alley, the only supervising investigator remaining in the Albuquerque office. [MSJ Exh. E, pp. 202, 204-08]

In the Tenth Circuit, a person is not substantially limited in the major life activity of working, for purposes of the Rehabilitation Act or the ADA, if the person's impairment prevents or hinders her only from performing the job she has at the current time. *See Siemon v. AT&T Corp.,* 117 F.3d 1173, 1176 (10th Cir. 1997). Instead, the individual must have a significant restriction in the ability to perform a class of jobs, or a broad range of jobs in various classes, as compared to the average person having comparable training, skills, and abilities. *Id.* In *Siemon,*

the plaintiff alleged that his impairment prevented him from being able to perform any job in one 150-member unit of the Denver office of his employer, under the chain of command of one particular supervisor.  He did not allege that his impairment prevented him from working in any of the other Denver units of the employer, or for any other Denver employer.  The Tenth Circuit held that, where the plaintiff's mental impairment "merely prevents him from working under a few supervisors within the organizational structure of one major corporation," the plaintiff was not disabled for purposes of the ADA.  *Id.*  Similarly, Plaintiff in this case has shown only that her panic disorder, depression, and agoraphobia severely hinder her from being able to perform her job under certain supervisors, while claiming that a transfer to the legal unit would allow her to perform her job well.  Following Tenth Circuit precedent, the Court must hold that Plaintiff has failed to show her impairments severely restrict her in the major life activity of working.  *See also Weiler v. Household Finance Corp.*, 101 F.3d 519, 524-25 (7th Cir. 1996) (major life activity of working not substantially impaired if plaintiff merely cannot work under certain supervisor because of stress and anxiety caused by that supervisor).[4]

Although Plaintiff's response argues only that she has suffered impairment of the major life activity of working, the Court notes that Plaintiff claimed in her affidavit that she has also been

_____

[4]The Court has not ignored Plaintiff's evidence that her mental impairments caused her to have to take leave without pay for five months in 2001, and to be taken to the hospital twice over a five-year period with severe panic attacks brought on by work-related stress.  If it were sufficient for Plaintiff to show she is severely restricted from working under a particular supervisor or in a particular unit of an employer, the Court would agree this evidence raises an issue of fact concerning impairment of the major life activity of working.  As discussed above, however, this is not the law in the Tenth Circuit.  Also as discussed above, the only evidence presented in this case is to the effect that Plaintiff would be well able to perform the functions of her position, or similar positions with other employers, if she operated under different supervision.  Accordingly, the evidence she has presented does not raise an issue of fact concerning the working-as-major-life-activity issue.

impaired in the following major life activities:  (1) driving an automobile; (2) public speaking; (3) going into public places, such as shopping centers or auditoriums; (4) undergoing medical and dental treatment (Plaintiff requires sedation); (5) sleeping; and (6) eating.  [Resp., Exh. 1]  As discussed below, the Court finds either that these activities are not major life activities, or that Plaintiff did not present evidence sufficient to raise an issue of fact as to whether her ability to perform the activities has been severely restricted.

A major life activity is one that is of central importance to most people's daily lives.  *See McGeshick, supra,* 357 F.3d at 1150.  Given this definition, the Court finds as a matter of law that "public speaking" is not a major life activity.  *See Ross v. GTE Directories Corp.*, 73 F.Supp.2d 1342, 1346 (M.D. Fla. 1999) (where plaintiff could speak at normal decibel level in normal environment, plaintiff was not impaired in major life activity of speaking).  In addition, even if obtaining medical or dental care might be considered a major life activity, the mere fact that Plaintiff requires sedation before she can obtain such treatment does not severely restrict her from performing those activities.  Also, the Court finds that going to shopping centers or auditoriums is not a major life activity.[5]

As to sleeping and eating, the Court acknowledges they are major life activities.  The only evidence presented concerning these activities, however, is the statement from Plaintiff's affidavit listing them as major life activities that have been impaired by her disability.  This statement is

_____

[5]The Court notes that Plaintiff is able to come to work and return home, and has not claimed she is severely restricted in the activities she can perform outside her home.  *Cf. Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 152-53 (2d Cir. 1998) (employee's panic disorder and agoraphobia did not substantially limit a major life activity, even though the plaintiff could not travel through tunnels or over bridges, or go to shopping malls, where it was uncontested the plaintiff traveled to and from his home to his place of employment on a regular basis).

nothing more than a conclusory allegation that is insufficient to raise an issue of fact worthy of trial. *See United States v. Simons*, 129 F.3d 1386, 1388 (10th Cir. 1997) (conclusory allegations by non-movant will not suffice to avoid summary judgment). Plaintiff has not explained how her ability to sleep or eat has been impaired, how often either one is affected, or the degree to which either is affected. She has presented no evidence from professionals that might indicate her ability to sleep or eat has been severely restricted by her mental condition. The Court therefore finds Plaintiff has failed to raise an issue of fact as to whether she is severely restricted in performing these major life activities. *See Steele v. Thiokol Corp.*, 241 F.3d 1248, 1254 (10th Cir. 2001) (no evidence sleep problems impaired plaintiff's ability to work or overall health, so summary judgment appropriate on issue of whether life activity of sleep substantially impaired).

The last major life activity Plaintiff claims is restricted by her mental impairments is driving. The Court notes that a number of circuits have explicitly stated that driving is not a major life activity. *See, e.g., Felix v. N.Y. City Transit Auth.*, 324 F.3d 102, 106 (2d Cir. 2003); *Chenoweth v. Hillsborough County*, 250 F.3d 1328, 1329-30 (11th Cir. 2001); *Sloan v. City of Pittsburgh*, 2004 WL 1932633 (3d Cir. unpublished). Another judge in this district has reached the same conclusion. *Rushing v. Zia Natural Gas Co.*, 03 CIV 901 WJ/LCS. Furthermore, even if everyday driving might be considered a major life activity, Plaintiff has presented no evidence indicating she is precluded from all driving; instead, her evidence is to the effect that she cannot drive on a freeway. [Resp. Exh. 1, paragraph 37] The Court has no difficulty in concluding that "driving on freeways" is not a major life activity.

For the foregoing reasons, the Court finds Plaintiff is not "disabled" within the meaning of the Rehabilitation Act.

**B.  Whether Plaintiff's Requested Accommodation Was Reasonable:**  Even if Plaintiff is considered disabled for purposes of the Act, her reasonable-accommodation claim fails because the accommodation she has requested is not reasonable as a matter of law.  Plaintiff requests transfer to Defendant's legal unit in Albuquerque, so she will not be supervised by Ms. Marchbanks or Ms. Garcia-Alley.  The authority the Court has reviewed, however, indicates that a transfer to a different supervisor, or away from current co-workers, is not a reasonable accommodation, even if the current supervision or work arrangement is causing the stress that exacerbates the plaintiff's impairment.  *See Gaul v. Lucent Technologies Inc.,* 134 F.3d 576, 581 (3d Cir. 1998) (proposed accommodation of being transferred away from co-workers who caused the plaintiff inordinate and prolonged stress was unreasonable as a matter of law); *Weiler v. Household Finance Corp.*, 101 F.3d 519, 526 (7th Cir. 1996) (ADA does not require employer to transfer employee to work under different supervisor, or to transfer supervisor; ADA was not intended to interfere with personnel decisions in an organizational hierarchy); *DeWitt v. Carsten*, 941 F.Supp. 1232, 1235-36 (N.D. Ga. 1996) (ADA doesn't require transfer to reduce stress);  *cf. Gonzagowski v. Widnall*, 115 F.3d 744, 747-48 (10th Cir. 1997) (where employee's anxiety was caused by his relationship with his supervisor, federal defendant did not fail to perform reasonable accommodation because there was no vacant position available to which employee could be transferred).  In this case, Plaintiff's requested accommodation is even more drastic because she has requested not just a transfer to a different supervisor, but a transfer out of the unit she works

11

for to an entirely different unit.  The Court finds Plaintiff has not presented sufficient facts to make such a transfer a reasonable accommodation under the Rehabilitation Act.[6]

**C. Hostile Work Environment Due to Disability:**  If Plaintiff were considered disabled for purposes of the Rehabilitation Act, her hostile-work-environment claim would still fail.  This is because Plaintiff presented no evidence that the harassment to which she was subjected was due to her claimed disability.  As discussed below in the retaliation section of this opinion, Plaintiff did present evidence that she was treated differently than other employees, singled out for punishment unfairly, ostracized in the workplace, and otherwise mistreated.  However, Plaintiff presented no evidence that any of the people who did these things acted out of discriminatory animus based on Plaintiff's mental impairments.

Plaintiff argues in her response that she was only required to present sufficient evidence of harassment to allow a reasonable person to find that her work environment was hostile, and that she was not required to present any evidence concerning the motivation for that harassment. [Resp. p. 20]  In other words, Plaintiff contends she can survive summary judgment simply by presenting evidence of a hostile work environment, and that a jury should then be allowed to determine whether the harassment or hostility was due to Plaintiff's gender, national origin, or

---

[6]The Court did find one circuit-level case holding there is no per se rule that a transfer to a different supervisor can never be a reasonable accommodation.  *Kennedy v. Dresser Rand Co.*, 193 F.3d 120, 122 (2d Cir. 1999).  Instead, there is a presumption that a request to change supervisors is unreasonable, and the burden of overcoming that presumption lies with the plaintiff. *Id.*  If this is the standard that applies to Plaintiff's requested accommodation, the Court would still grant summary judgment to Defendant.  Plaintiff's requested accommodation would require that she be transferred entirely out of her unit, and Plaintiff presented no evidence concerning the organizational structure of Defendant or how her transfer would work administratively. Therefore, she has failed to raise an issue of fact concerning the reasonableness of her request, given the presumption against such transfers.

disability.  That is not the law in the Tenth Circuit.  For example, it is not enough for a plaintiff claiming a hostile work environment based on race to show that his workplace is permeated with intimidation, ridicule, and insult; instead, to survive summary judgment a plaintiff is required to show that the ridicule he faced stemmed from racial animus.  *Bolden v. PRC Inc.*, 43 F.3d 545, 551-52 (10th Cir. 1995).  Similarly, in order to survive summary judgment a plaintiff claiming she suffered a hostile work environment due to her gender must present evidence of harassment that would not have occurred but for her gender; if the nature of her employment environment, however unpleasant, is not due to her gender, the environment is not actionable as gender discrimination under Title VII.  *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995); *Lord v. Kerr-McGee Coal Corp.*, 809 F.Supp. 87, 90-91 (D. Wyo. 1992).

It is true, as Plaintiff argues, that not all of the incidents of harassment need to be explicitly tied to a protected status to be considered as part of the hostile-work-environment claim.  *See Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1263 (10th Cir. 1998).  However, there must be some indication that the harassment is motivated by discriminatory animus based on the plaintiff's protected status.  *See id.* at 1262-63 (analyzing evidence to determine whether any of the incidents of harassment were gender-related, concluding that most were not, and affirming grant of summary judgment on hostile-work-environment claim).  In this case, Plaintiff has presented much evidence indicating that her mental impairments were exacerbated severely by the conduct of Marchbanks and others.  She has not, however, presented any evidence that their conduct was motivated by a prejudice against Plaintiff's impairments, or against sufferers of anxiety disorders in general.  For example, she has presented no evidence indicating any that Marchbanks or any of the other alleged harassers made derogatory comments about anxiety

13

disorders or the people who suffer from them.  Absent such evidence, or other evidence that

Marchbanks or the others were biased against people suffering from anxiety disorders, no

reasonable jury could find that the harassment inflicted on Plaintiff was motivated by

discrimination on the basis of her disability.  Therefore, even if Plaintiff were found to be disabled

for purposes of the Rehabilitation Act, summary judgment would still be appropriate as to her

hostile-work-environment claim under that act.

### III.  Gender/National Origin Discrimination as Basis of Hostile Work Environment:

Plaintiff maintains she was subjected to a hostile work environment on the basis of her gender and

her national origin.  This claim, however, is subject to summary judgment for the same reason as

the disability-discrimination claim:  Plaintiff has presented no evidence indicating that gender bias

or national-origin bias might have played a role in the harassment inflicted on Plaintiff.  There is

no evidence that Ms. Marchbanks, Ms. Garcia-Alley, Mr. Alley, or Mr. Burtner (the main alleged

harassers) ever made any negative or derogatory comments about women or Hispanics, or

Hispanic women; in fact, two of those four are women, one (Garcia-Alley) is a Hispanic woman,

and one (Alley) is married to a Hispanic woman.[7]  There is no evidence that while the "harassing"

---

[7]As noted above, Plaintiff's position appears to be that she need not point to evidence of
discriminatory motive, once she presents evidence of a hostile work environment.  Apparently for
that reason, Plaintiff's response brief does not discuss the evidence presented, or direct the
Court's  attention to any evidence indicating the alleged harassers had negative or discriminatory
attitudes about women or Hispanics.  While it is not the Court's duty to comb the record to find
evidence supporting one party or the other, the Court has reviewed the evidence submitted and
has found no indication that the alleged harassment inflicted on Plaintiff was due to her gender or
national origin.  For example, until Plaintiff's supervisory duties were removed, the only two
supervisory investigators in her unit were Hispanic females.  After her duties were removed, only
one supervisor remained--a Hispanic female.  *See Murray v. Wal-Mart Stores, Inc.*, 61 F.E.P.
850, 854 (D. Kan. 1993) (fact that replacement was also a woman cuts against gender bias as
motive for driving out plaintiff).  There is some sporadic indication in the record of Plaintiff's bare
accusations of discrimination; she made several unsupported, conclusory assertions discussing

incidents were occurring, there was any indication the reason for the incidents was either Plaintiff's gender or her national origin.  Again, as pointed out above, it is not sufficient for Plaintiff merely to present evidence of a hostile work environment without also presenting some evidence to show that discriminatory animus toward Plaintiff's protected status was the cause of that environment.  *See Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994). Summary judgment will also be granted on the hostile-work-environment claim to the extent it is based on gender or national-origin discrimination.

IV.  **Retaliation Claims:**  Plaintiff has raised two types of retaliation claims.  First, she maintains a hostile work environment was inflicted on her in retaliation for various acts of protected conduct.  *See Noviello v. City of Boston*, 398 F.3d 76, 88-89 (1st Cir. 2005) (recognizing viability of a "retaliatory hostile work environment" claim); *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264-65 (10th Cir. 1998) (setting out conditions under which a hostile environment created by co-workers could be considered intentional retaliation on part of employer).  Second, she contends a discrete act of retaliation was inflicted upon her when her supervisory duties and status were taken away.

A.  **Hostile Work Environment Based on Retaliation:**  The elements of a retaliatory-hostile-environment claim are the same as for any retaliation claim.  To make out a prima facie case there must be evidence that Plaintiff engaged in protected conduct, that she was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity, and

---

actions that were taken not by Ms. Marchbanks or Mr. Burtner, but by former supervisors, such as assigning most of the Hispanic investigators to the unit supervised by Plaintiff.  [MSJ, Exh. B, pp. 3-4]  The Court does not consider these assertions sufficient to raise a question of fact concerning the motivations of the people principally accused of creating the hostile work environment to which Plaintiff has allegedly been subjected.

that there is a causal connection between the protected activity and the adverse employment action. *Gunnell, supra,* 152 F.3d at 1263.  As discussed below, there is evidence that Plaintiff engaged in protected conduct, and there is evidence that she was subjected to adverse work conditions.  The questions that must be answered with respect to this claim are whether Plaintiff has submitted sufficient evidence to allow a reasonable factfinder to determine that her work environment rose to the level of a hostile work environment, and whether she has submitted enough evidence to raise an issue of fact as to whether that work environment was created out of retaliation for her protected conduct.

 **1. Existence of Hostile Work Environment:**  An actionable hostile work environment is one in which harassment is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment.  *Gross v. Burggraf, supra,* 53 F.3d at 1537.  In order to determine whether such an environment exists, the Court must examine the totality of the circumstances, such as the nature of the incidents and the contexts in which they occurred.  *Id.*  In examining the evidence presented by the parties, the Court has excluded evidence that is merely conclusory, or not admissible for some reason.[8]  The Court has also viewed the evidence in the light most favorable to Plaintiff, and recognizes that Defendant has presented evidence contradicting many of the "factual" statements made below.

---

 [8]For example, one incident claimed by Plaintiff to be harassment was her statement in her affidavit that Sylvia Fernandez told Plaintiff that Burtner and Marchbanks "insisted" that Fernandez file a grievance against Plaintiff so they could "deal" with Plaintiff.  [Resp., Exh. 1, par. 13]  There is no evidence that Fernandez' conversation with Plaintiff was in the course and scope of her employment duties; therefore, there is no basis for an exception to the hearsay rule, and the Court has not considered Fernandez' alleged statement to Plaintiff.  Similarly, Defendant attached as exhibits unsworn statements from several unidentified employees concerning their alleged desire not to be supervised by Plaintiff.  [MSJ, Exh. R, exhibits]  Those unsworn statements are hearsay, and the Court has ignored the contents of the statements.

After assessing the admissible evidence, the Court finds Plaintiff has clearly raised a genuine issue of material fact as to whether she was subjected to a hostile work environment for the period from November 5, 2001, to the present.  On that date, Plaintiff returned to work after taking four or five months of leave without pay.  While she was on leave without pay, Plaintiff's duties as a supervisor were removed and she was given a new position as GS-13 level investigator, the only such position in a field office in the country [MSJ Exh. O, par. 24-25].  The only supervisory investigator left in the unit then became Garcia-Alley.  Instead of being made part of Garcia-Alley's unit, however, Plaintiff was excluded from all meetings of the investigatory staff [MSJ Exh. O, par. 29; Resp. Exh. 1, par. 45].  Plaintiff was and is supervised by Marchbanks directly rather than by Garcia-Alley [*Id.*].  Plaintiff is denied the help of investigator assistants, which adds to her workload, while other investigators use the assistants to cover intake when the investigators are out of the office [MSJ Exh. K, p.2].  Plaintiff is never named the Officer in Charge, as are the other GS-13 level employees in the office, even though a GS-12 employee is put in charge of the office from time to time [*Id.*].  Plaintiff was not allowed to choose her office location when Defendant's office space was renovated, and has an office on the 10th floor, near Marchbanks, while all the other investigators are on the 9th floor [*Id.*; also MSJ Exh. O, par. 35].

In short, there is evidence that Plaintiff is kept physically and administratively segregated from all the other investigators in the Albuquerque office, and is subjected to special requirements that are not applied to the other investigators.  This evidence alone is sufficient to raise an issue of fact as to whether a reasonable employee would find the work situation pervasively hostile enough to change the conditions of employment.  A reasonable employee who is isolated from everyone else doing the same job, on a continuous basis, is certainly subjected to pervasive

17

treatment; whether that treatment is sufficiently hostile to rise to the level of an abusive workplace raises a question of fact in this case.  *Cf. Noviello, supra*, 398 F.3d at 93 (falsely informing plaintiff she was required to take her dinner breaks alone contributed to hostile work environment, as work sabotage, exclusion, and denial of support can be sufficient to create such an environment).

As to the period of time prior to May, 2001, much of Plaintiff's evidence concerns isolated incidents that are not severe or pervasive enough to rise to the level of a hostile work environment.   Burtner hired Marchbanks as the manager of the enforcement unit in 1999, even though Plaintiff had applied for the position [MSJ, Exh. M, pp. 45-46].[9]  In September 1999, Plaintiff was the only manager excluded from a group created by Marchbanks to set up an intake system for the office [MSJ, Exh. G, pltf. declaration p. 3].  In October 1999, Plaintiff was required to provide a doctor's note before being granted "advanced" sick leave,[10] even though Plaintiff had not been required to do so before Marchbanks became her supervisor [*Id.* p. 4].

---

[9]Plaintiff presented conclusory evidence of incidents occurring prior to this hiring.  She claimed she was "subjected to retaliation and a hostile work environment by the male managers" after she reported sexual harassment of another female employee.  [Resp., Exh. 1, par. 9]  She also claimed that Burtner made "inappropriate comments" during her interview for the position, concerning the sexual harassment that had occurred in 1994-95.  [MSJ, Exh. G, pltf. declaration p. 1]  Without facts to support these conclusory statements, and considering the passage of time since the events Plaintiff complains of, the Court will not consider anything that happened prior to the Marchbanks hiring as part of this case.  *See, e.g., Duncan v. City and County of Denver*, 397 F.3d 1300, 1309-10 (10th Cir. 2005) (hostile acts stretching back throughout plaintiff's career were not part of the claimed hostile work environment that was the basis of plaintiff's lawsuit, given age of allegations, identity of perpetrators of harassment, and other factors).

[10]Advanced sick leave is borrowing from future sick leave when the employee has exhausted all available current sick leave; employees are expected to "repay" the advanced sick leave later, out of accruing sick leave.

These instances of "harassment" are too insignificant to raise an issue of fact as to whether Plaintiff was subjected to a hostile work environment prior to May, 2001.[11]

Most of Plaintiff's major complaints began in April, 2001.  In late April, Marchbanks was out of the office for a week attending a conference, and left Plaintiff in charge of the unit for the first half of the week [MSJ Exh. O, p.1].  During that week, Plaintiff was involved in a conversation with one employee (Ms. Smith) who threatened to quit following the conversation; another employee, Ms. Fernandez, had conversations with Marchbanks and Plaintiff concerning a dispute between Ms. Fernandez and Plaintiff, as a result of which Marchbanks told Ms. Fernandez she could file a grievance against Plaintiff; and a new administrative secretary hired by Marchbanks yelled at Plaintiff and Garcia-Alley, told them to get out of her office, and threatened to quit [MSJ Exh. G, Pltf. decl. pp. 5, 6; Exh. Q, p. 2].  When Marchbanks returned to the office, she consulted with Burtner and then placed Plaintiff on administrative leave, on April 30th, in order to investigate the incidents that had occurred.  As part of that administrative leave, Plaintiff was instructed not to talk to any of the employees in the office, and to be available by telephone [MSJ Exh. O, p. 2].[12]

On May 1st, the following day, Plaintiff was told to come in to the office to be interviewed; prior to her interview Plaintiff and/or her husband attempted to call Marchbanks, but she did not return their phone calls [*Id.* pp. 2-3; ].  On May 2d, Plaintiff returned to work, but she was "being avoided by the managers and some staff members" [Resp. Exh. 1, par. 21].  Plaintiff

---

[11]It should be noted that the hiring of Marchbanks instead of Plaintiff was a discrete act that is not part of this case, and does not factor into the hostile-work-environment issue.

[12]Plaintiff, in somewhat exaggerated fashion, characterizes these orders as a "gag order" and the equivalent of house arrest.

was anxious about the investigation being performed by Marchbanks, and on May 3d suffered a panic attack at work that caused her to be taken to the hospital. [Resp. Exh. 1 par. 21-23].

Later in May, Plaintiff experienced other instances of negative treatment, or treatment perceived by Plaintiff as negative, from Marchbanks. On May 21, 2001, Marchbanks wrote a memo to one of her superiors, proposing to discipline Plaintiff; this proposal resulted in a letter of reprimand issued June 6 [Reply Exh. Z, Z-1]. Around May 23, 2001, Plaintiff told Marchbanks she would like to hire a Native American man, Mr. Bluehorse, for a clerk position in Plaintiff's unit. Plaintiff argued with Marchbanks when Marchbanks indicated Mr. Bluehorse should stay in school and get his degree, and she would prefer to hire a different person, a white female, for the position. A week later the white female was hired instead of the candidate favored by Plaintiff [*Id.* par. 50-54]. On May 22 or 23, Marchbanks denied Plaintiff's request for advanced sick leave so that Plaintiff could attend a dentist's appointment, stating that advanced sick leave is only to be used for serious medical issues and the dentist's appointment was not related to Plaintiff's disability or therapy [*Id.* par. 47; Resp. Exh. 1 par. 29].

Sometime toward the end of May, Plaintiff and Marchbanks had discussions about equalizing the number of investigators in Plaintiff's unit and Garcia-Alley's unit. Marchbanks did not want to transfer investigators to Plaintiff's unit against their will, although she had the power to do so. She asked the union representative to solicit volunteers for such a transfer; none of the investigators in Garcia-Alley's unit volunteered to transfer (as noted above, their reasons for not doing so are hearsay and have not been considered by the Court). Marchbanks then asked the union representative to get the reasons for their refusals in writing, an act characterized by Plaintiff as soliciting "ammunition" against her [MSJ Exh. B par. 55-57; Exh. R. pp. 8-12].

According to Plaintiff, the harassment she was suffering continued in June.  On June 5, Plaintiff filed a formal complaint with Defendant, alleging discrimination and retaliation arising out of the investigation of the April incident with Marchbanks' secretary  [MSJ Exh. G].  The next day, a letter of reprimand was issued to Plaintiff, accusing her of berating Marchbanks' secretary and provoking the secretary's angry response [MSJ Exh. O-1]  Marchbanks also told Plaintiff she would be reassigned to a different position, as "FEPA Coordinator,"  which was a position Plaintiff could not perform because it involved public speaking and driving on freeways (this assignment was later rescinded due to Plaintiff's medical condition) [Resp. Exh. 1, par. 34, 37]. After receiving the letter of reprimand and the proposed reassignment, Plaintiff went on leave without pay until November 5, 2001, in reaction to the stress caused by the treatment she was receiving from Marchbanks [*Id.* par. 36; MSJ Exh. O, par. 18].  While she was on leave, as discussed above, Burtner and Marchbanks took away Plaintiff's supervisory responsibilities.

In sum, then, Plaintiff suffered the following acts of "harassment" during May and June 2001:  she was unfairly placed on administrative leave while Marchbanks investigated an incident that was not Plaintiff's fault; during the investigation Plaintiff was not given any information or allowed to discuss the matter with any other employee; Plaintiff's favored candidate for a position in her unit, whom she would supervise, was not hired; she was denied advanced sick leave for a dentist's appointment; Marchbanks solicited volunteers to be supervised by Plaintiff instead of simply ordering some employees into her unit; Plaintiff was briefly assigned to a position she could not perform due to her medical condition; she was issued a letter of reprimand; and her

supervisory duties were taken away.[13]  A reasonable factfinder could determine that these incidents, taken together, constituted a hostile work environment, since they occurred close together in time, making them "pervasive," and had a significant impact on Plaintiff's job and her status at work.

### 2.  Causal Connection Between Protected Conduct and Hostile Work Environment:

As discussed above, there is a question of fact as to whether Plaintiff's work environment was hostile during the period from late April 2001 to the present.  The remaining question is whether Plaintiff has presented evidence from which a reasonable factfinder could conclude there was a causal connection between Plaintiff's protected conduct and the actions taken against her by Marchbanks and others.  Such a connection can be inferred if there is evidence of protected conduct followed closely by adverse action by the employer, or evidence of other circumstances justifying an inference of retaliatory motive.  *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000).

There is evidence of several instances in which Plaintiff engaged in protected conduct, including the following:  (1) on May 3, 2001, Plaintiff sent a memo to Marchbanks, with copies to other EEOC officials, complaining that the investigation of her conduct during the incident with Marchbanks' secretary was groundless, discriminatory, and retaliatory  [MSJ Exh. F]; (2) later that month, as noted above, Plaintiff challenged Marchbanks' reluctance and ultimate refusal to hire a Native American for a position in Plaintiff's unit; (3) also as noted above, on June 5th,

---

[13]Even though the demotion of Plaintiff to non-supervisory status is a discrete act that may be separately actionable, it can also be used as evidence of the existence of a hostile work environment.  *Cf. Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (unexhausted discrete actions are relevant as background evidence in support of a timely filed claim).

2001, Plaintiff filed a formal EEOC complaint alleging discrimination and retaliation; and (4) Plaintiff continuously added amendments to her EEOC complaint, including one formal amendment following submission of the case to an ALJ [MSJ Exhs. I, J, K; Reply Exh. Y-1].[14]

Virtually contemporaneously with Plaintiff's acts of protected conduct, Marchbanks and Burtner took the actions discussed above that were adverse toward Plaintiff--on May 21, 2001, less than three weeks after Plaintiff's memo complaining of discrimination and retaliation, Marchbanks proposed to discipline her; a few days later Marchbanks hired an employee for Plaintiff's unit over Plaintiff's objections, and denied her advanced sick leave for a dentist's appointment; and on June 6, the day after Plaintiff filed her formal EEOC complaint, the letter of reprimand was issued and Plaintiff was told she was being reassigned to a position without supervisory responsibilities and that she allegedly could not perform.  Although this reassignment was later rescinded, Plaintiff was then reassigned to a position without supervisory responsibilities, authority, or status.  These adverse actions, contemporaneously with or shortly after Plaintiff's protected conduct, create a prima facie case of retaliation.  *Jeffries v. Kansas*, 147 F.3d 1220, 1231 (10th Cir.1998).

---

[14]Plaintiff has also raised allegations concerning other complaints she made that do not appear to be protected conduct under Title VII or the Rehabilitation Act.  For example, she maintains she complained to the EEOC Inspector General's office concerning several incidents.  These incidents include Marchbanks allegedly lying about having investigated a complaint made by an employer against one of Defendant's investigators, as well as Marchbanks, Garcia-Alley, Alley, and other employees of Defendant using work time to attend the wedding of Garcia-Alley and Alley in September 2001 [[MSJ Exh. B, par. 45-46; Resp. Exh. 1, par. 40-43 (misnumbered as a second par. 41)].  Since these complaints concerned misconduct by Defendant's employees rather than discrimination, they are not protected by the statutes under which Plaintiff has filed suit.

Defendant maintains there were legitimate, non-retaliatory reasons for all the actions taken against Plaintiff, entitling Defendant to summary judgment despite the existence of the prima facie case of retaliation. If Plaintiff can produce evidence that these reasons are pretextual, however, Plaintiff can avoid summary judgment. *See id.* The Court finds there is such evidence in this case. For example, Defendant maintains that Marchbanks investigated Plaintiff concerning the secretary incident, proposed discipline, and then issued a letter of reprimand because Plaintiff was the person at fault in causing the confrontation. However, Plaintiff has produced evidence from herself and from Garcia-Alley indicating that the secretary began yelling at them as soon as Plaintiff started to speak to her, and ordered them both out of her office even though both were supervisors at that time [MSJ Exh. B, par. 32; Resp. Exh. 7].[15] There is no evidence the secretary was disciplined at all for the incident. This different treatment of the parties involved in the confrontation, especially given the independent witness's apparent view that the confrontation was the fault of the secretary, raises an issue of fact as to whether disciplining Plaintiff for the confrontation was justified or was a pretext for retaliation.

---

[15]Defendant argues that Garcia-Alley's e-mail to Marchbanks, Exh. 7 to the response, is inadmissible because it was not attached to an affidavit. This is not correct; the only documents that must be attached to an affidavit are those a party wishes to admit pursuant to personal knowledge of the document. *Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). A proper foundation for other documents may be established in any manner permitted by Rules 901 or 902 of the federal rules of evidence. *Id.* In particular, e-mails are admissible if they contain sufficient identifying matter such as the identities of the sender or the recipient, as well as the contents of the email themselves. *See, e.g., United States v. Siddiqi*, 235 F.3d 1318, 1322-23 (11th Cir. 2000) (e-mail printouts sufficiently authenticated); *United States v. Simpson*, 152 F.3d 1241, 1250 (10th Cir. 1998) (printout of chat room discussion sufficiently authenticated); *Fenje v. Feld*, 301 F.Supp.2d 781, 809 (N.D. Ill. 2003) (e-mail communications may be authenticated in several ways).

Another example of evidence of pretext concerns the removal of Plaintiff's supervisory status.  Defendant maintains the supervisory duties were removed for two reasons:  first, the Albuquerque office had been told it should have only one supervisory investigator rather than two; and second, Plaintiff's conduct, and the poor view of her supervisory skills held by Marchbanks, Burtner, and the investigators she would be supervising, made it imperative that she be removed as supervisor.  Plaintiff, however, has produced evidence showing that the reduction in supervisors from two to one did not need to be accomplished in any time frame, but could be handled through attrition [Resp., Exh. 3].  Furthermore, although Marchbanks did obtain information indicating that none of the investigators in Garcia-Alley's unit wanted to transfer to Plaintiff's unit and be supervised by her, there is no evidence that any of the investigators actually being supervised by Plaintiff in June 2001 were dissatisfied with her supervision.  Finally, Plaintiff maintains, without any contradiction from Defendant, that none of her performance evaluations have indicated a problem in her relationships with other employees [Resp. Exh. 1, par. 46]. Plaintiff has therefore raised an issue of fact as to whether the reasons offered by Defendant for the demotion from supervisor are genuine or pretextual.[16]  For that reason, summary judgment will be denied on the claim that Defendant created a retaliatory hostile work environment.  This ruling covers the entire period from May 2001 to the present, since a reasonable factfinder could infer that the same intent behind the hostile environment created in May and June was behind the hostile environment created as soon as Plaintiff returned to work in November.

---

[16]The Court recognizes there is evidence in the record tending to show that Plaintiff may indeed have problems with supervising other employees without alienating them, and with accepting supervision from anyone.  That evidence is simply contrary evidence that must be ignored for purposes of summary judgment.

**B.  Discrete Action--Removal of Supervisory Duties:**  The Court has already discussed this action in the hostile-work-environment section.  There is evidence that Plaintiff engaged in protected conduct in May and June, 2001, and that her supervisory duties were first removed from her on June 6, the day after she filed her EEOC complaint.  This removal of duties was made permanent a short time later.  Also, as discussed above, there is evidence that the reasons offered for the removal of those duties are not genuine.  Therefore, there is an issue of fact as to whether Plaintiff was demoted from her supervisory position as retaliation for her protected conduct, or for legitimate reasons.  Summary judgment must be denied on the discrete-act claim arising out of Plaintiff's demotion to the extent the claim is based on retaliation.  However, to the extent Plaintiff would base the claim on gender, disability, or national origin discrimination, summary judgment will be granted.  There is no evidence that the removal of Plaintiff's supervisory position was due to such discrimination.

**V.  Conduct of the Trial:**  Based on the evidentiary submissions of the parties, it appears that there may be efforts to introduce much evidence into this case that is irrelevant to the specific claims that are being allowed to proceed to trial.  For example, Plaintiff claims to have been subjected to harassment from employees other than Marchbanks and Burtner, although the basis for this "harassment" does not appear to have anything to do with retaliation for conduct protected by Title VII or the Rehabilitation Act.  Plaintiff maintains, for instance, that Garcia-Alley and Alley have harassed her, including an incident in which Alley allegedly shoved Plaintiff as she exited an elevator and he entered it.  She claims the Alleys have been angry at her because she complained about employees taking time off work to attend their wedding, and that Mr. Alley is still angry at her for a less-than-perfect evaluation she gave him when she was his supervisor.

This is not evidence that Garcia-Alley or Alley were retaliating against her for protected conduct, and without such evidence these types of incidents are irrelevant to the case that will be tried. The Court will not admit evidence concerning every incident Plaintiff has been involved in with her co-workers in the last four years.  F.R.E. 402.  In addition, both parties are cautioned to avoid reliance on hearsay evidence, which both parties attempted to do in their summary-judgment exhibits.

     **Conclusion:**  Based on the foregoing, the following claims will be dismissed:  (1) the hostile-work environment claim to the extent it is based on disability, gender, or national-origin discrimination; (2) the claim arising out of the decision to suspend Plaintiff, effective October 2003; (3)  Plaintiff's claim for reasonable accommodation of her disability; and (4) the claim arising out of the demotion of Plaintiff from supervisor, to the extent that claim is based on disability, gender, or national-origin discrimination.  The claims remaining for trial will be the retaliatory-hostile-work-environment claim, and the retaliation claim arising out of Plaintiff's demotion from her supervisory position.


## ORDER

     Based on the foregoing Memorandum Opinion, it is hereby ORDERED that Defendant's amended motion for summary judgment (Doc. 85) be, and hereby is, GRANTED in part and DENIED in part; that Plaintiff's motion to summarily deny Defendant's original motion for summary judgment (Doc. 87) be, and hereby is, DENIED; and that Defendant's motion to strike Plaintiff's response to Defendant's motion (Doc. 98) be, and hereby is, DENIED.

27

**DATED** at Albuquerque this 6th day of July, 2005.

BRUCE D. BLACK
United States District Judge

**Attorneys:**

**For Plaintiff**
Dennis W. Montoya
Kathryn Hammel

**For Defendant**
Cynthia Weisman
Theodore E. Ravas